ANDERSON CARRIAGE CO. v. PUNGS.

1. PLEADING—BILL OF PARTICULARS—AMENDMENT—NEW CAUSE OF ACTION.

A bill of particulars in a suit in justice's court, setting up a claim on a promissory note, may be amended in the circuit so as to claim for money advanced at defendant's request on account of such note, since the amendment does not introduce a new cause of action.

2. CORPORATIONS—SALE OF STOCK—CONTRACT TO VACATE OFFICE—RATIFICATION—RIGHT TO SALARY.

A. and P. were stockholders and officers of a corporation. Dissensions having arisen between them, P. gave A. an option to purchase his stock. The purchase was afterwards made, A. and two others, constituting three of the five directors, giving their note for part of the purchase price, and P. agreeing, as part of the consideration, to sever all connection with the concern and at once vacate his office. Soon thereafter the three directors mentioned held a meeting, at which they treated P.'s office as vacant and elected a successor. Held, that, conceding that the directors did not act collectively as such in contracting with P. for his withdrawal from the corporation, their action was more than personal, and was ratified on behalf of the corporation at the subsequent meeting; and that, therefore, the corporation was not liable to P. for salary as such officer subsequent to the sale of his stock.

3. Same—Meeting of Directors—Notice.

    A director in a corporation, who has disposed of all of his interest therein, cannot complain that he had no notice of a subsequent meeting of the directors.

Error to Wayne; Carpenter, J. Submitted April 17, 1901. Decided July 10, 1901.

*Assumpsit* by the Anderson Carriage Company against William A. Pungs for goods sold and delivered. From a judgment for plaintiff, defendant brings error. Reversed.

*Barbour & Rexford*, for appellant.

*Russel & Campbell*, for appellee.

Hooker, J. The plaintiff's claim, for which this action was brought, is not denied. The questions before us relate to two items of set-off. The defendant was a large stockholder and director in the plaintiff company, its name then being the Pungs-Anderson Manufacturing Company. He was also treasurer and general manager, being elected on September 27, 1898. His salary was fixed at $5,000 per year, $416.66 being payable on the 1st day of each month. Mr. Anderson was also a stockholder, and, dissensions having arisen between them, Pungs gave Anderson an option in writing, as follows:

    " In consideration of one dollar, to me in hand paid by W. C. Anderson, and other considerations, I hereby give said Anderson an option to purchase at par at any time on or before June 1st, 1899, all my holdings of the capital stock of the Pungs-Anderson Manufacturing Company, of Detroit, Michigan; this option being conditioned that at the same time, or before my stock is transferred, I shall be released from all obligations of said company, and my property which is pledged as collateral to any of its obligations shall be released and delivered over to me.

    " Dated Detroit, April 15, 1899.

                      [Signed]   " W. A. Pungs."

Pungs had stock to the amount of $47,800, par value; and on May 5, 1899, Anderson paid $21,000 or $22,000 in

cash to Pungs, and on the same day Pungs received the note of Anderson, Newcomb, and Locke, all being directors (of whom there were five), for $25,000, secured by stock to the amount of $50,000, deposited with Hayes as trustee.    The trust agreement is as follows:

"DETROIT, MICH., May 5th, 1899.

"This is to certify that F. W. Hayes, as trustee, is hereby authorized to surrender to Messrs. Wm. C. Anderson, W. M. Locke, and C. A. Newcomb fifty thousand (50,000) dollars of the stock pledged as collateral to a certain note for twenty-five thousand (25,000) dollars made by the parties named in favor of W. A. Pungs, and Messrs. Anderson, Locke, and Newcomb hereby acknowledge receipt of said stock, which is to be transferred on the books of the Pungs-Anderson Manufacturing Company to Messrs. Anderson, Locke, and Newcomb in such number of certificates, and for such amounts, as they may elect between themselves.

"Said stock, as soon as issued, is to be assigned in blank, properly stamped with revenue stamps, and witnessed, and returned to said Hayes, to be held by said Hayes as collateral security to said note, in accordance with its terms; and said Hayes is hereby authorized to accept payments on said note in sums of five thousand (5,000) dollars, and to deliver five thousand (5,000) of said stock whenever a payment of that amount is made on said note, and to surrender all of the balance of stock when the note is paid in full.

[Signed]    "W. A. PUNGS.
"W. M. LOCKE.
"W. C. ANDERSON.
"C. A. NEWCOMB."

The new stock issued, and was deposited May 7, 1899. At the time these things took place, Pungs was indorser of the company's paper to a large amount.    He was relieved from this on May 5, 1899, except two notes, of $2,500 each, held in Chicago.    These were paid in August, 1899, by the company.

The company had taken from one Warren a note for $137, due June 1, 1898, and Pungs, as treasurer, discounted this note at the Preston National Bank before maturity.    When it became due, it was protested, Warren

127 MICH.—35.

having been garnished in Connecticut. Pungs was spoken to about it by the cashier, and replied that the company did not want to take the note back, its defense to the garnishment being that the note was out of its possession; and offered to put up his personal note for $137, and guarantee them, until they had forced collection of the note. He accordingly gave his note for $142. Pungs testified that he paid his note, and had never been reimbursed. This item was as follows in the bill of particulars: "F. M. Warren's note, indorsed by plaintiff. Principal, $137; interest and protest fees, Warren note, $9.51." Objection being made to the proof, the court permitted defendant to amend the bill of particulars "with an item added;" *i. e.*, "Money advanced by defendant for the use and benefit of plaintiff, at plaintiff's request, on account of the F. M. Warren note, indorsed by plaintiff. Principal, $137; interest and protest fees, $9.51." Afterwards the court determined that this was improperly permitted, and instructed the jury that no allowance should be made for this item. My Brethren think that he erred in this, and that the case is not within the rule of *Fowler* v. *Hyland*, 48 Mich. 179 (12 N. W. 26); *Loranger* v. *Davidson*, 110 Mich. 605 (68 N. W. 426); *Frohlich* v. *Graulich*, 113 Mich. 65 (71 N. W. 477),—for the reason that the claims under the original and amended bills of particulars relate to the same transaction.

The remaining question relates to the item for salary as treasurer from May 5 to June 1, 1899. On May 8th a meeting of the directors was held, three being present, and the record shows that the president stated that Pungs had sold his entire stock, thereby causing a vacancy in the board of directors and in the office of treasurer and manager; whereupon Locke was elected to fill the vacancy as treasurer, and one Stevens as director. Pungs claims that he continued treasurer during the month of May, and that late in May he sent in his resignation, to take effect June 1, 1899. The court instructed the jury as follows:

"There is just one question in this case to be submitted to you, and that is whether or not Mr. Pungs, the defendant, is entitled to his salary from the 5th of May to the 1st of June, 1899. You have heard the testimony of these various witnesses produced here. On the part of Mr. Pungs, it is plain that his salary was to continue until he was released from his obligations on certain notes; that he subsequently waived this, and put in a resignation, to take effect on the 1st of June. Other witnesses produced by the plaintiff in this case testified that it was the arrangement that Mr. Pungs should vacate his position on the 5th of May, and that his salary should then cease. Now, that is peculiarly a question for you. What was the agreement? If it was the agreement between these parties that Mr. Pungs' salary should cease when that stock was transferred, then Mr. Pungs is not entitled to that salary after the 5th of May. If, on the other hand, it was the agreement that his salary should continue until he was released from his obligations on this outstanding paper, then he is entitled to his salary from the 5th of May to the 1st of June."

Exception was taken to this. It is defendant's claim that his office was not made vacant by the sale of his stock; that there is no evidence that, as part consideration for the purchase of his stock, he agreed to vacate the office; and that, if there was such contract, it was between him upon one side, and Anderson, Locke, and Newcomb upon the other, and that the plaintiff was not a party to it.

The jury found that Pungs did agree to get out of the company, and give up his office, upon the sale of his stock, and we think the evidence indicates that it was the understanding of all that he should. We think, moreover, that he is in no position to deny plaintiff's right to treat the office as vacant. It is apparent that the action of the members of the board of directors was not merely personal. The interests of the concern demanded a change, and its officers negotiated with Pungs to bring it about. We cannot say, as a legal conclusion, that this was a personal contract between the individuals. If, in negotiating the contract, they did not act collectively, they all signed the obligation for the stock and the trust agreement. It is not

clear that they did not act collectively as directors in authorizing or making this contract with Pungs to sell his stock and get out of the concern, taking the stock as individuals as a means of accomplishing it.    Indeed, it is more than probable that they did so.    Three of the four directors remaining met soon after, and, acting upon the understanding that Pungs had severed his connection with the concern, elected a successor, thereby officially recognizing and acting upon the arrangement of which every one of them had knowledge.    It is said this was not a valid meeting, because Pungs was not notified; but, if a notice was necessary,—which we do not intimate,—it is no concern of his.    No member of the corporation has found any fault with this action.    There is little reason to doubt that the board has ratified this whole transaction, if they did not lawfully participate in it.    We are of the opinion that, under the evidence in the case, it was proper for the court to say that, if the jury should find that Pungs agreed, as a part consideration for this purchase, to abandon his office, they should not allow the item for salary.

We think it unnecessary to discuss other questions. The judgment is reversed, and a new trial ordered.

The other Justices concurred.