OTSEGO PAPER STOCK CO. *v.* BROWN.

1. CORPORATIONS—SOLVENT CORPORATION MAY PURCHASE ITS OWN STOCK.
    A solvent corporation may lawfully purchase shares of its own stock.[1]

2. EVIDENCE—PAROL EVIDENCE—RECORDS OF DIRECTORS' MEETING.
    Where a record is not made of the proceedings of a directors' meeting, parol evidence is admissible to show what was resolved upon.[2]

3. CORPORATIONS—CORPORATION MAY NOT RECOVER MONEY USED TO BUY ITS OWN STOCK.
    Where certain directors and stockholders of a solvent close corporation, either actively or by inaction for an unreasonable length of time after learning of the facts, consented to the use of corporate money in part for the purpose of purchasing the remaining shares of stock, which were assigned to the president, the money so used is not recoverable in an action therefor by the corporation, on the theory that it was a misapplication of corporate funds, the rights of creditors not being involved.[3]

4. SAME—CORPORATION HAS NO INTEREST AS TO WHO ARE HOLDERS OF ITS STOCK.
    A corporation as a legal entity has no interest in whom the title to the shares of its stock is vested.[4]

Error to Allegan; Cross (Orien S.), J. Submitted January 22, 1925. (Docket No. 48.) Decided April 3, 1925.

Assumpsit by the Otsego Paper Stock Company against George R. Brown and others for an amount paid for certain shares of stock in plaintiff corporation. Judgment for plaintiff *non obstante veredicto.* Defendants bring error. Reversed, and judgment ordered entered for defendants.

[1]Corporations, 14a C. J. § 2124; [2]Id., 14a C. J. § 1857; Evidence, 22 C. J. § 1295; [3]Corporations, 14a C. J. § 2239; [4]Id., 14 C. J. § 5.
On right of corporation to purchase its own shares of stock, see notes in 61 L. R. A. 621; 25 L. R. A. (N. S.) 50; 30 L. R. A. (N. S.) 694; 44 L. R. A. (N. S.) 156; L. R. A. 1916F, 286.

*Clare E. Hoffman* (*Dunham, Cholette & Quail,* of counsel), for appellants.

*Charles Thew,* for appellee.

SHARPE, J.    The plaintiff company was organized in 1918 for the purpose of handling waste paper products.    The stockholders, all of whom were elected directors, were Samuel Slosberg, Eber W. Sherwood, William A. Mansfield and the defendants, Brown, Parker and Siple.    Slosberg was elected president and Mansfield secretary-treasurer.    All of the company's business was conducted by Slosberg.    It does not appear that any record was made of the business transacted at meetings of the board of directors, nor was any account kept of the receipts and disbursements except as they were shown by the account kept in the Citizens' State Savings Bank in Otsego, of which Mansfield was cashier.    At a meeting of the directors held early in 1920, Slosberg expressed a desire to purchase the stock of the others, and all of them were willing to sell to him.    Slosberg testified that "the company then was making money."    He made an offer to pay them a part of the par value of their stock in cash and to give his notes for the balance, payable in one year.    During the discussion, Mr. Sherwood, who was planning on a trip to California, said: "Now, whatever you fellows decide to do will meet with my approval."    Some time after he left, a meeting of the other five stockholders was held at the bank.    Slosberg then stated that he had made a loan of $2,000 from a brother in Chicago and that he would pay Brown, Parker and Siple (hereinafter called the defendants) cash for their stock.    He had in fact deposited this sum in the bank to the credit of the corporation.    A few days later Mansfield informed the defendants individually that he had the money for them for their stock.    They indorsed

their certificates to Slosberg, and each received from Mansfield checks on the bank signed by the plaintiff company, "By S. Slosberg, Pres.," for $1,090. These checks were paid. Mansfield at that time said: "We have decided to stand by Slosberg." As a matter of fact, these payments overdrew plaintiff's account to the amount of $723.26. Sherwood returned to Otsego about May 1, 1920. He soon after said to one, and perhaps all, of the defendants "that he didn't think it was quite fair that he hadn't received pay for his stock." This was the first intimation that defendants had that Slosberg had not also purchased the stock of Sherwood and Mansfield. These two, however, continued to act as directors, held meetings, and thereafter rendered assistance to Slosberg in the management of the business. On November 26, 1921, Slosberg wrote defendants, saying that as they were "aware" he had used some of the money of the corporation to purchase their stock and offering to return to them "enough shares of stock to represent the proportion of that money that went to pay for your stock." It does not appear that defendants replied thereto. On December 19, 1921, this action was begun by the plaintiff corporation to recover from the defendants the moneys received by them from the bank, less the $2,000 deposited by Slosberg.

The trial court submitted the facts to the jury, who found for the defendants. In answer to special questions, they found that at the time defendants transferred their stock to Slosberg they believed that he "was paying therefor with his own funds," and that the moneys of the company were used therefor without their knowledge. The court, however, had taken plaintiff's motion for a directed verdict under advisement, and, on its renewal after verdict, he entered a judgment for plaintiff for $1,418. This defendants review on writ of error. The errors assigned are on

such action and the refusal to enter judgment on the verdict.

In the opinion filed by the court when ordering judgment for plaintiff, he stated that—

"The testimony shows that they did this in good faith and honestly believed at the time that all of the stockholders had consented to the agreement and were to be paid a similar sum.

"The directors are trustees of the funds of the corporation and must see to it that the funds of the corporation are applied to the payment of its creditors, and the surplus, if any, divided among the stockholders according to their respective shares.

"It was the duty of the defendants, Messrs. Brown, Parker and Siple as directors to see to it that this trust was properly executed."

This but states the elementary law governing the officers of corporations.   Counsel for defendants so concedes.   He insists, however, that it has no application here.   The plaintiff was what is frequently spoken of as a "close corporation."   There were but six stockholders, and all were directors.   The declaration set up that the corporation was insolvent at the time of the transfer.   Counsel for plaintiff objected to proof of the then financial condition of the corporation as evidenced by its report to the secretary of State for the year 1919, insisting that it had no bearing on defendants' liability, and the objection was sustained. The proofs clearly show that the corporation was solvent.   Being so, it might lawfully purchase the shares of its own stock held by the defendants.   *Cole* v. *Cole Realty Co.,* 169 Mich. 347.   Of the money paid defendants, $2,000 was contributed by Slosberg personally.   The balance was drawn out of the treasury of the corporation.   Had appropriate corporate action been taken to justify such payment, the stock represented thereby, although assigned to Slosberg, would have become treasury stock.   When a record is not made of the proceedings of a directors'

meeting, parol evidence is admissible to show what was resolved upon. *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226 (3 L. R. A. 378, 16 Am. St. Rep. 633). *Gustin* v. *Merrill*, 144 Mich. 498, involved transactions among stockholders in a close corporation such as this. Merrill had purchased the stock of one Bennett, using the funds of the corporation in making payment therefor. We quote from the syllabus:

"Where stock of a corporation is purchased from a stockholder with company funds it becomes treasury stock, and an accounting between the remaining stockholders should proceed on the basis of their respective holdings of the stock yet outstanding."

While the corporation is the plaintiff, the only parties in interest are the three remaining stockholders. The following from Morawetz on Corporations, § 1, was quoted with approval in *Chicago, etc., R. Co.* v. *Miller,* 91 Mich. 166, 182:

"It is essential to a clear understanding of many important branches of the law of corporations to bear in mind distinctly, that the existence of a corporation independently of its shareholders is a fiction; and that the rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it, and not of an imaginary being."

That Slosberg and Mansfield consented to the moneys of the corporation being in part used to purchase defendants' stock there can be no doubt. When Sherwood returned in May, 1920, and learned what had been done, he could as a director and stockholder have repudiated the transaction and insisted on the defendants' returning to the corporate treasury the money they had received therefrom. But he did not do so. While expressing regret that provision had not also been made for Slosberg to take over his stock, he, by his actions, if not by words, ratified what had been done in his absence. He, Slosberg, and Mansfield,

held stockholders' meetings and continued the business without expressing to defendants any intention to repudiate the sale made by them, from May 1, 1920, when he returned, until November 26, 1921, more than 18 months.   Defendants sought, ineffectually, to introduce the annual report for 1920.   We can but assume that it would have shown that all of the stock was owned by Slosberg, Sherwood and Mansfield. Defendants sought to show that dividends had been paid to the three remaining stockholders after their stock had been transferred.   The objection of plaintiff's counsel thereto was sustained.   There was no competent evidence to show that the company was insolvent at the time the suit was brought.   Defendants' efforts to ascertain its financial condition were fruitless because of the objections of plaintiff's counsel.

Without in any way questioning the propriety of the rule of law stated by the trial court, we are constrained to hold that it is not applicable to the facts here presented.   The defendants acted in good faith. The conduct of the other three stockholders in taking charge of the business, and in treating the assignment of the stock as valid for so long a time, precludes them from raising the question of the regularity of its transfer or the misappropriation of the corporate moneys by which they were paid therefor.   Slosberg and Mansfield may not complain, as they both actively participated in what was done.   The assent of Sherwood may be implied from his silence and inaction for the unreasonably long time which he permitted to elapse before questioning the transaction after he had acquired knowledge of the facts.   The corporation as a legal entity has no interest in whom the title to the shares of its stock is vested.   The real controversy is not between the corporation and the defendants, but between the corporation acting on behalf of the remaining stockholders and them.   We again em-

phasize the fact that the rights of creditors are not involved.    The reasoning in *Vander Meer* v. *Weurding*, 227 Mich. 46, is instructive on the question presented.    See, also, *Anderson Carriage Co.* v. *Pungs*, 127 Mich. 543.

The judgment entered is reversed and set aside, with costs to defendants, and the cause remanded with directions to the trial court to enter a judgment on the verdict in their favor.

McDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.