BARDEN *v*. A. HELLER SAWDUST CO.

1. APPEAL AND ERROR—GRANTING NEW TRIAL WITHIN DISCRETION OF COURT AFTER AFFIRMANCE WHERE CASE REMANDED.
    The trial court has power to grant a new trial, even after affirmance of judgment by the Supreme Court, where the case is remanded without direction as to final disposition thereof.

2. SAME—NEW TRIAL—DISCRETION OF COURT.
    Where two actions were tried together, and verdict was directed for defendant in each case, but writ of error was prosecuted in one case only, and new trial was granted therein, on motion of counsel, because the stenographer's notes were lost, it was within the discretion of the court to grant a new trial in the other case of its own motion.

[1]Appeal and Error, 4 C. J. § 3273; [2]Id., 4 C. J. § 3273 (Anno).

3. SAME — WHERE BOTH PARTIES MOVED FOR DIRECTED VERDICT, JUDGMENT AFFIRMED.

Where both parties moved for a directed verdict, and verdict was directed for defendant, it is the duty of the Supreme Court, on review, to affirm if the trial court's decision is right in law and supported by substantial evidence.

4. CORPORATIONS—SOLVENT CORPORATION MAY PURCHASE ITS OWN STOCK, BUT NOT IF INSOLVENT.

While a solvent corporation may purchase its own stock, at least when bought from surplus, an insolvent corporation may not do so; such transactions being invalid and against public policy.

5. SAME—ASSETS ARE TRUST FUND IN HANDS OF DIRECTORS.

The assets of a corporation are a trust fund in the hands of the board of directors.

6. BILLS AND NOTES—CONSIDERATION MAY BE INQUIRED INTO AS BETWEEN ORIGINAL PARTIES.

As between the original parties to a note, the consideration may be inquired into.

7. SAME—CORPORATIONS — DEFENSE THAT CORPORATE NOTE WAS VOID AS AGAINST PUBLIC POLICY AVAILABLE TO DIRECTORS WHO INDORSED IT.

In an action on a note brought by the payee against a corporation and two of its directors, indorsers, the parties being the original parties to the note, the defense that the transaction was void as against public policy because said note was given by the corporation for the purchase of its own capital stock at a time when it was insolvent is available to the individual defendants as well as to the corporation.

Error to Charlevoix; Gilbert (Parm C.), J.   Submitted June 10, 1927.   (Docket No. 76.)   Decided October 3, 1927.

Assumpsit by Frank O. Barden, Sr., against the A.

[3]Appeal and Error, 4 C. J. § 2872; [4]Corporations, 14a C. J. §§ 2124, 2126; 61 L. R. A. 621; 25 L. R. A. (N. S.) 50; 30 L. R. A. (N. S.) 694; 44 L. R. A. (N. S.) 156; L. R. A. 1916F, 286; 7 R. C. L. 547; 2 R. C. L. Supp. 407; [5]Id., 14a C. J. § 1948; [6]Bills and Notes, 8 C. J. §§ 1018, 1019; Evidence, 22 C. J. § 1559; [7]Bills and Notes, 8 C. J. §§ 1018, 1031.

Heller Sawdust Company and others on a promissory note.

Assumpsit by the A. Heller Sawdust Company against Frank O. Barden, Sr., for the amount of a stock subscription. The cases were consolidated and tried as one. Judgment for defendants. Plaintiff in the first case brings error. Affirmed.

*E. A. Ruegsegger* (*Clink & Williams,* of counsel), for appellant.

*J. M. Harris,* for appellees.

FELLOWS, J.    Frank O. Barden, Sr., Alex. Heller, and Charles T. Sherman caused to be incorporated under the Michigan statute the A. Heller Sawdust Company, with a capital stock of $10,000, all common, to which each subscribed for one-third. They became directors of the corporation so organized. Heller furnished either by check or note $1,000. Neither of the other parties furnished or paid in any money. It should be here noted that we are not dealing with the purchase or retirement of preferred stock. Mr. Barden's business required him to move to an eastern State, and the company purchased his stock for $5,000 and released him from liability on his stock subscription. The purchase price of the stock was made up of $3,000 cash which was borrowed from a bank and a note for $2,000 signed by the company and Heller and Sherman. The first of these suits is on this note, and the second to recover for the stock subscription. The cases were tried together and a verdict was directed for defendants in both cases. As a writ of error is prosecuted only in the first case, we shall only have occasion to refer to the second case on a question of practice.

The cases had been before the present trial tried together before the court without a jury, a like result

being reached.    Separate judgments for defendants had been entered.    Mr. Barden desired to review the first case here and took the necessary steps to settle a bill of exceptions.    The stenographer, however, lost his notes, and on motion of Barden's attorneys a new trial was granted for this reason.    The trial judge supposed that the granting of a new trial applied to both cases, as they had been tried together.    Upon the present trial counsel for Barden insisted that the judgment for him was *res adjudicata* of questions here involved, and, as it still remained in force, the other party was bound by it.    After considerable discussion, the trial judge caused an order to be entered granting a new trial in the second case, and directed the trial to proceed in both cases together as they involved the same state of facts.    We shall not discuss the question of *res adjudicata*.    The trial judge set aside the judgment and granted a new trial in the case which is claimed to be *res adjudicata*.    This he had a right to do on his own motion.    *Fort Wayne, etc., R. Co.* v. *Wayne Circuit Judge*, 110 Mich. 173.    He would even have the right to grant a new trial after affirmance in this court.    *Reynolds* v. *Newaygo Circuit Judge*, 109 Mich. 403; *Parkey* v. *Galloway*, 147 Mich. 693.    Under the circumstances here disclosed, the trial judge did not abuse his discretion in granting a new trial on his own motion in the second case.    The first case is, therefore, before us with the question of *res adjudicata* eliminated, and is the only case before us.

While it may not be established beyond dispute that the company was insolvent when it purchased the plaintiff's stock and that it purchased it for itself, there is substantial evidence in the case sustaining these facts.    Both parties having moved for a directed verdict, it is our duty to affirm if the court's decision is right in law and supported by substantial evidence. *Hannan Real Estate Exchange* v. *Davis*, 238 Mich.

257, and authorities there cited. Therefore the meritorious question before us is the right of an insolvent corporation to purchase its own corporate stock.

The English courts are quite unanimous in holding that a corporation may not purchase its corporate stock unless authorized so to do by its charter. Some of the American courts follow the English rule but a majority of them, including this court, have not. The rule in this State has been thus stated:

"A corporation acting in good faith, without objection from stockholders and without prejudice to creditors, may purchase shares of its own stock, regardless of the purpose for which it was organized, unless forbidden by statute." *Cole* v. *Cole Realty Co.,* 169 Mich. 347.

See, also, *Clark* v. *E. C. Clark Machine Co.,* 151 Mich. 416; *Otsego Paper Stock Co.* v. *Brown,* 230 Mich. 260. In each of these cases there was no question of the solvency of the company at the time the transaction took place.

The textwriters and courts which recognize and follow this rule, however, agree that it is not applicable to insolvent corporations, or corporations which, by using their assets to purchase their own stock, thereby become insolvent, and some go further and hold that it is not applicable where such action will deplete the capital account, that it may only be purchased out of surplus. Mr. Cook, in his valuable work on corporations, while recognizing the majority rule applicable to solvent corporations, unequivocally and with the citation of numerous decisions says (2 Cook on Corporations [8th Ed.], p. 1040):

"If the corporation is insolvent at the time of the purchase it is clearly an invalid transaction, and will be set aside. The rule goes still further, and declares that if a corporation, by a purchase of shares of its own capital stock, thereby reduces its actual assets

below its capital stock and debts, or if the actual assets at that time are less than the capital stock and debts, such purchase may be set aside and the guilty corporate officers, as well as the vendor of the stock, may be rendered liable thereon at the instance of a corporate creditor."

The circuit court of appeals for the 2d circuit, in the case of *In re Fechheimer Fishel Co.*, 212 Fed. 357, said:

"As the note was given by the corporation for its own stock, the right to enforce payment out of the assets of the corporation depends upon the existence of surplus profits.

"If at the time the stockholder receives payment for his stock the payment prejudices the creditors, payment cannot be enforced. If a stockholder sells his stock to a corporation which issued it, he sells at his peril and assumes the risk of the consummation of the transaction without encroachment upon the funds which belong to the corporation in trust for the payment of its creditors.

"The right of the creditors of the corporation cannot be defeated by the fact that at the time the transaction was entered into the seller of the stock and the officers of the company who purchased it were acting in good faith and supposed that the company was solvent."

The rule and when not applicable is well stated in the case of *In re S. P. Smith Lumber Co.*, 132 Fed. 618. It was there said (omitting the citation of authorities):

"In the United States, I take it, the weight of authority upholds the right of a corporation, in the absence of statutory prohibition, to become the purchaser of shares of its own capital stock. * * * But the courts which have most distinctly announced and upheld this doctrine have most definitely held to and rigidly enforced the collateral principle that a corporation cannot become such purchaser when it results in a fraud upon the rights of or injury or loss

to the creditors of the corporation. * * * The danger of fraud being perpetrated upon or of injury and loss resulting to creditors was one of the potent reasons moving the courts of England to establish and adhere to the rule that a corporation cannot become the purchaser of its own shares of stock. * * * In view of the contrary doctrine obtaining in most of the courts of this country, the safety of the creditors of a corporation lies in the recognition and enforcement of the collateral principle above set forth. Were it not for the existence of this principle, creditors or corporations would occupy a most hazardous and perilous position."

In *Crandall* v. *Lincoln*, 52 Conn. 73, 100 (52 Am. Rep. 560), the court after considering the question reached this conclusion:

"Our conclusion is that the capital stock of the company being impaired when the stock in this case was purchased, and the stock in each case having been paid for from the capital, the transactions were illegal and cannot be sustained."

In *Hall* v. *Henderson*, 61 L. R. A. 621 (126 Ala. 449, 28 South. 531, 85 Am. St. Rep. 53), it was said:

"We are aware that the courts of this country are divided upon the question as to the power of corporations to acquire and hold their own stock. But in no jurisdiction is the power of a corporation to purchase its own shares sustained if the purchase is made with the intent to injure its creditors, or to defeat them in the collection of their claims, or if it has such effect."

We shall not cite further from cases in other jurisdictions. A large number of cases are cited and discussed in a footnote in the last cited case, and in 25 L. R. A. (N. S.) 50, and in Cook on Corporations above cited. We are persuaded that the holdings of this court are in accordance with the holdings of other courts adhering to the majority rule. In *Miller* v. *Griswold Building Co.*, 217 Mich. 192, one of the incorporators had turned in her interest as vendor of a

land contract for 500 shares of the stock of the company. The company became involved and returned to her such interest and she surrendered her stock. It was held in a proceeding instituted by a creditor that the property she received in such deal was an equitable corporate asset and liable for the corporate debts. This court even went further in *McIntyre* v. *E. Bement's Sons*, 146 Mich. 74 (10 Ann. Cas. 143), and held that an express contract to repurchase shares issued by a corporation made when it was solvent could not be enforced against the company after it had become insolvent.

We are satisfied that the rule that while a solvent corporation may purchase its own stock, at least when done from surplus, an insolvent corporation may not do so, and that such transactions are invalid and against public policy, is a safe rule and one which should be followed by this court. The assets of a corporation are a trust fund in the hands of the board of directors. To permit their use to purchase stock of the company when the company is insolvent would open the door to all sorts of fraud by the corporate officers and insiders at the expense of creditors and innocent stockholders. Such a practice should be condemned, and condemned in no uncertain terms. The consideration of the note here involved was this unlawful transaction. By this transaction plaint'ff was relieved of his subscription amounting to $3,333.33, received $3,000 in cash and a note for $2,000 additional for the surrender of 33 1/3 shares of stock in an insolvent corporation. He and his codirectors of the corporation had no authority under the law to make such a deal.

It is further urged that this defense is not available to the individual defendants; that they are estopped. The suit is between the original parties to the note. As between the original parties the consideration may

be inquired into.    The consideration here is based on an unlawful contract, one against public policy.    The individuals as well as the corporation may make the defense of a failure of consideration.

The judgment will be affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.