NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0001n.06

Case No. 14-1060

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 02, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| IN RE: B & P BAIRD HOLDINGS, INC., | ) | |
| | ) | |
| Debtor. | ) | ON APPEAL FROM THE UNITED |
| ——————————————————— | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| KELLY M. HAGAN, | ) | MICHIGAN |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAMELA BAIRD, | ) | |
| | ) | |
| Appellee. | ) | |

**BEFORE: DAUGHTREY, McKEAGUE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Chapter 7 Bankruptcy Trustee Kelly M. Hagan[1] appeals from the district court's affirmance of the bankruptcy court's denial of leave to amend Trustee's complaint in the adversary proceeding Trustee brought on behalf of the debtor, B & P Baird Holdings (Debtor), against William (Bill) and Pamela (Pam) Baird (collectively the Bairds)[2] to recover funds appropriated by them from the sale of Debtor's assets. *Hagan and King Par, LLC*, Case No. 11-80397 (Bankr. W.D. Mich.). The question on appeal is whether the bankruptcy court properly concluded that the doctrine of *in pari delicto* bars Trustee's claim of

---

[1] The initial Trustee, James W. Boyd, resigned on May 27, 2014, after he was confirmed to serve as a bankruptcy judge for the Western District of Michigan. Hagan was appointed as his successor Trustee. All references to Trustee before May 27, 2014, refer to Boyd.

[2] The Bairds have since divorced.

conversion against Pam, thus rendering Trustee's proposed amendment futile.[3]    Because Trustee's proposed allegations are consistent with a scenario to which *in pari delicto* would not apply, we REVERSE the denial of Trustee's motion for leave to amend and REMAND to the bankruptcy court for further proceedings.

## BACKGROUND

### A.  Izzo Sues Debtor

On January 8, 2002, Izzo Golf, Inc. (Izzo), brought a patent-infringement action against Debtor, a golfing equipment company that was then known as King Par Corporation (Old King Par (OKP)), alleging that OKP's golf bags infringed on Izzo's patents.   Izzo's motion for summary judgment was granted in part on July 5, 2007, resulting in OKP's liability to Izzo as well as continuing litigation.  *See Izzo Golf, Inc. v. King Par Golf Inc.*, No. 02-CV-6012 CJS, 2010 WL 86653 (W.D.N.Y. Jan. 6, 2010) (summarizing the proceedings).

### B.  Debtor Sells Substantially All Its Assets

On June 4, 2009, after lengthy negotiations and while Izzo's suit was still pending, OKP, Baird Family LLC and Bill entered into an Asset Purchase Agreement (APA) with KP Acquisition Company, LLC ("New King Par" or "NKP")[4] for the sale of all OKP inventory and substantial portions of OKP's land to NKP for $3,400,000, subject to certain adjustments.[5]   The APA further provided that NKP would, for a fee, collect all OKP receivables outstanding as of March 31, 2009, as fiduciary, and use the funds to pay OKP debts accrued as of that date.   Any

---

[3] The Final Order Dismissing Adversary Proceeding as to William Baird was filed on January 21, 2014.

[4] On or about June 9, 2009, NKP changed its name from KP Acquisition Company to King Par, LLC.  Consistent with the record, we will refer to it as NKP.

[5] Although the sale closed on June 4, 2009, it had an effective date of April 1, 2009. NKP took over the operations of OKP on April 1, 2009, "in order to take advantage of the important spring selling season."

funds remaining after OKP's debts were paid and NKP took its fees were to be paid to OKP regularly. OKP retained only what the APA identified as "Excluded Assets" and "Excluded Liabilities." Among the liabilities designated as excluded was liability related to the Izzo litigation. Thus, under the APA, OKP retained essentially only liabilities and the potential for receivables collected on its behalf by NKP.

At the closing of the sale, NKP wired $4,010,242 to one of the Bairds' joint personal accounts (the "Arvest account") at Bill's direction. On or about June 9, 2009, OKP changed its name to B & P Baird Holdings, Inc. Bill remained the president, director, and shareholder of the new entity. The July, August, and September 2009 excess receivables owed to Debtor were used to pay $384,334 on the Bairds' personal tax obligations. All subsequent monthly receivable collections owed to Debtor were wired to the Bairds' Arvest account.[6]

At the time the APA closed, OKP had liabilities in excess of one million dollars, including a $350,000 obligation to Izzo for the claim for which Izzo was granted summary judgment. The Bairds made payments totaling at least $263,269.67 to a number of OKP's creditors, not including Izzo, from their personal bank accounts while continuing to incur costs and fees associated with the ongoing patent-infringement litigation. Izzo obtained a judgment against Debtor for $3,286,476.65, and later successfully petitioned for post-verdict enhanced damages.

---

[6] After closing, OKP and NKP disputed the final sale price under the APA. OKP claimed that NKP still owed it $500,000. NKP, on the other hand, filed a proof of claim in the bankruptcy action alleging that it was owed money in connection with the APA.

**C. Bankruptcy Filing and Instant Adversary Proceeding**

On September 9, 2010, Debtor filed a voluntary Chapter 7 bankruptcy petition, listing Izzo among six unsecured creditors and stating that Debtor's total liability was $3,676,741.95.[7]

On August 23, 2011, Trustee initiated this adversary proceeding against the Bairds and NKP[8] based on the Bairds' designation of the Arvest account for receipt of funds generated by the sale of Debtor's assets. On January 6, 2012, Trustee requested leave to amend the complaint, which the court granted on January 25, 2012. The first four counts of Trustee's first amended complaint sought the avoidance and recovery of allegedly fraudulent transfers to the Bairds; Count V alleged that the Bairds violated the Michigan Business Corporation Act; and Counts VI and VII alleged Michigan common-law and statutory conversion. The conversion claims alleged that the proceeds of sale were diverted to the Bairds as part of a scheme developed and carried out by Pam and Bill, who were in control of Debtor's management and direction, or, alternatively, carried out only by either Pam or Bill.

### i. Trustee Requests Leave to File Second Amended Complaint

On March 13, 2012, the bankruptcy court granted Pam's motion to dismiss the conversion counts (Counts VI and VII) for failure to state a claim based on the court's determination that Trustee had not alleged that the Bairds had actually diverted the funds for their personal use. Trustee then moved to file a second amended complaint, again asserting the two conversion counts, but with added factual detail to support a finding that the Bairds used the funds generated from the sale of Debtor's assets for their own personal use and benefit. Among Trustee's allegations were that Bill and Pam used money from the proceeds of the sale to buy a

---

[7] OKP's total liabilities greatly increased after Izzo submitted its updated proof of claim with post-verdict damages factored in, amounting to $12,000,000.

[8] Debtor settled the adversary claim against NKP.

4

house in Hawaii and made a number of transfers from the proceeds into various personal bank accounts. The Bairds objected to the amendment and both sides briefed the issue.

At the hearing on Trustee's request for leave, the bankruptcy court raised *sua sponte* the *in pari delicto* issue, positing that it might vitiate Trustee's conversion claims and render Trustee's proposed amendments futile. The bankruptcy court requested that the parties file post-hearing briefs. In Trustee's brief, Trustee argued that the Bairds were corporate insiders whose wrongful acts should not be protected, and that the Bairds and their actions were distinct from Debtor, and thus *in pari delicto* would not apply.

In its June 11, 2012 bench opinion, the bankruptcy court found that "the scales of justice still weigh in favor of trustee being given the opportunity to plead any and all viable claims that can be made against the Bairds with respect to the New King Par proceeds they received and deposited in the Arvest account," and that Trustee's second amended complaint properly alleged conversion. However, the bankruptcy court also found that embezzlement, to which Michigan law applies the doctrine of *in pari delicto*, is a more accurate description of "the unlawful conduct of which the Bairds stand accused," and that the doctrine applies to Trustee's embezzlement/conversion claims. The bankruptcy court rejected Trustee's arguments and reasoned that because Debtor and the Bairds were effectively one and the same, and the doctrine of *in pari delicto* provides a complete defense, the Bairds could not be liable for injuring Debtor. Thus, the bankruptcy court denied as futile Trustee's motion to file the second amended complaint.

### ii. Trustee's Motion to Alter or Amend the Order

Trustee moved to alter or amend the order denying leave to amend, arguing that because Pam alleged she had no active role in the conversion of Debtor's assets, the *in pari delicto*

doctrine did not apply to her. In an affidavit attached to her response to Trustee's motion for summary judgment, Pam claimed that she had not been a shareholder of Debtor at any time relevant to the dispute. She further swore that she had not signed many of the corporate documents bearing her signature and indicating her role in the company.

Trustee put forth two scenarios in which innocent conversion by Pam was consistent with the allegations of the proposed second amended complaint. First, Trustee argued that paragraph 217 left open the possibility that Pam acted innocently, by alleging action by "Pam and/or Bill." Second, Trustee asserted that if Pam was still an OKP shareholder, she was an innocent decision maker, thus rendering *in pari delicto* inapplicable. As to Trustee's first proposed scenario, the bankruptcy court held that

> the doctrine of *in pari delicto* applies in this instance because the person or persons controlling debtor were also the persons or persons who were benefiting from the alleged conversion. Therefore, it makes no difference whether Mr. or Ms. Baird controlled debtor as trustee alleges, or only Mr. Baird controlled the debtor, which is what Ms. Baird contends. Either way, debtor had to be complicit in the conversion if that is in fact what occurred, and, as such, trustee, as debtor's successor in interest, is barred by the doctrine of *in pari delicto* from alleging that a conversion had taken place.

However, the court recognized that *in pari delicto* might not apply to Trustee's second proposed scenario, yet found the allegation too conjectural to support leave to amend.

> Trustee posits a hypothetical that has not in fact been alleged. If at some point he wishes to make this allegation, then the Court will at that time consider once again his conversion count. Or alternatively if Ms. Baird prevails at trial concerning her innocence, then trustee can ask at that time to amend his complaint to add the conversion so as to have his complaint conform with the proofs. However at this point in time, trustee is alleging that Ms. Baird was part of the decision process and as such, this exercise is pure speculation at this time.

### iii.    Pam's and Bill's Settlements with Trustee

Trustee reached settlements with Pam and Bill, approved by the bankruptcy court[9] and supported by Izzo, Debtor's largest creditor, with regard to all but the conversion claim against Pam.  Pam agreed to pay $1,875,000 into the bankruptcy estate, and Bill agreed to pay $1,900,000.[10]  The only remaining claim, the potential conversion claim against Pam, carries with it the possibility of treble damages under Michigan law.

### iv.    Appeal to the District Court

Trustee appealed the bankruptcy court's denials of Trustee's motion to file a second amended complaint and to alter or amend that denial.  The district court affirmed, concluding that the bankruptcy court's determination that Trustee had properly pled embezzlement, not conversion or innocent conversion, was well founded, that "[t]he innocent conversion gloss the trustee now wants to place on the conversion claims in his proposed second amended complaint are [sic] not consistent with the facts alleged," and that the bankruptcy court properly applied the doctrine of *in pari delicto* to bar the potential conversion/embezzlement claim.

## DISCUSSION

### I.    Leave to Amend the Complaint

#### A.  Standard of Review

We review *de novo* the district court's decision to deny Trustee leave to amend his complaint on the grounds of futility.  *Orton v. Johnny's Lunch Franchise*, *LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).  "A

---

[9] The settlement approval motions were filed and approved in the underlying bankruptcy case, No. 10-10941-JRH, not the adversary proceeding, in order to allow OKP's other creditors the opportunity to object to the settlement.  The Final Order Dismissing Adversary Proceeding As to William Baird was filed on January 21, 2014.

[10] The most recent Trustee's Status Report, filed July 21, 2014, indicates that Pam and Bill paid a combined total of $3,775,000 into the estate.

proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

## B. Adequacy of Conversion Allegation

Trustee argues that the bankruptcy court erred in treating the complaint as if alleging only embezzlement although it also effectively pled conversion. We agree that Trustee adequately pled conversion against Pam.

Under Michigan law, the tort of conversion encompasses the tort of embezzlement. The Michigan conversion statute, Mich. Comp. Laws § 600.2919(a), provides that:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

The Michigan Supreme Court defines conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."

*Dep't of Agriculture v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 244 (Mich. 2010) (footnote

and citations omitted). Moreover, "[c]onversion may occur when a party properly in possession

of property uses it in an improper way, for an improper purpose, or by delivering it without

authorization to a third party." *Id.*

As the bankruptcy court recognized, Trustee properly alleged a claim of conversion. The

proposed amended complaint makes the following allegations in Count VI for common-law

conversion:

> ¶ 213. Defendants' acts as set forth above constitute, under the common law of the
> State of Michigan, the improper and unlawful domination and control by Defendants
> over the property of Debtor and its creditors, in denial of or inconsistent with the
> rights therein.
> ¶ 214. Because of their duties to the Debtor under the statutory and common law of
> the State of Michigan, Bill and/or Pam owed a fiduciary duty to the Debtor at the
> time of the distributions enumerated in Count V, above.
> ¶ 215. Under applicable Michigan law, "[t]he assets of a corporation are a trust fund
> in the hands of the board of directors." *Barden v. A. Heller Sawdust Co.*, 215 N.W.
> 364, 367 (Mich. 1927).
> ¶ 216. As such, the distributions were identifiable money that Bill and/or Pam had
> an obligation to deliver to the Debtor and its creditors, and in regard to which Bill
> and/or Pam had a duty to refrain from the improper and unlawful domination and
> control over, in denial of or inconsistent with the rights of Debtor and its creditors.
> ¶ 217. Pam and/or Bill are liable for conversion by aiding or abetting or assisting
> another in a conversion, even if acting innocently. *Prime Financial Service LLC v.
> Vinton*, 761 N.W.2d 694 (Mich. App. 2008). The tort of conversion may be
> committed unwittingly if a defendant comes into possession of another's property if
> the defendant is unaware of the plaintiff's property interest. *Warren Tool Co. v.
> Stephenson*, 161 N.W.2d. 133, 147-148 (Mich. App. 1968).
> ¶ 218. As a result of the above, it is clear that Defendants are liable to the creditors
> of Debtor for their conversion of the distributions.
> ¶ 219. Accordingly, Plaintiff Trustee is entitled to recover from Defendants the
> value of the converted distributions. 11 U.S.C. §544; *Moore v. Bay*, 284 U.S. 4
> (1931).

Further, pages 11 to 15 of the proposed amended complaint include a detailed accounting of the

transfers from the Arvest account into Pam and Bill's various personal accounts. Trustee thus

alleges that the Bairds impermissibly appropriated OKP funds for personal use.

Moreover, a cause of action for conversion under Michigan law need not necessarily include the intent element required for embezzlement and for the application of *in pari delicto*.[11] "[I]n general, [conversion] is viewed as an intentional tort in the sense that the converter's actions are wilful, although the tort can be committed unwittingly. . ." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992). The Michigan Court of Appeals has described conversion as a "strict liability tort," explaining:

> The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action.

*In re Pixley*, 456 B.R. 770 at 788 (quoting *J. Franklin Interests, L.L.C. v. Mu Meng*, No. 296525, 2011 WL 4501841, at *9 (Mich. Ct. App. Sept. 29, 2011) (per curiam)).

## C. *In Pari Delicto*

State law determines whether and how *in pari delicto* applies. Michigan law's wrongful-conduct rule incorporates the common-law *in pari delicto* maxim that "as between parties *in pari delicto*, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them." *Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 212-13 (Mich. 1995) (internal citations omitted); *see also Pantely v. Garris, Garris & Garris, P.C.*, 447 N.W.2d 864, 867 (Mich. Ct. App. 1989) ("*in pari delicto*, as a common-law doctrine, expresses the principle that wrongdoers ought each to bear the untoward consequences of their wrongdoing without legal recompense or recourse"). "To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal

---

[11] "Before [a claim of embezzlement] can be made out, it must distinctly appear that respondent has acted with felonious intent, and made an intentionally wrong disposal, indicating a design to cheat and deceive the owner." *People v. Hurst*, 28 N.W. 838, 839 (Mich. 1886).

10

statute." *Orzel*, 537 N.W.2d at 214. Further, "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages. . . . To establish causation, a defendant must show that the plaintiff's illegal conduct was a proximate cause of the plaintiff's injuries." *In re MuniVest Servs.*, *LLC*, 500 B.R. 487, 495 (Bankr. E.D. Mich. 2013) (citing *Orzel*, 537 N.W.2d at 215).

An agent's conduct is generally imputed to his principal, except where the agent acts in his own interest, adversely to his principal. This exception does not apply, however, where the agent and principal are effectively one and the same, and in such a case, the agent's fraudulent conduct will be attributed to the principal. "The general rule which imputes an agent's knowledge to his principal is subject to an exception where the agent acts in his own interest, adversely to his principal . . . . But this exception is qualified where the agent is the sole representative or 'sole actor' for the principal in the transaction." *Nat'l Turners Bldg. & Loan Ass'n v. Schreitmueller*, 285 N.W. 497, 499 (Mich. 1939).

> The sole actor rule comes into play where the wrongdoer is, in essence, the corporation (the "sole actor"). Indeed, it has its roots in cases where the agent and the principal are literally the same person (literally a "sole actor") and thus information obtained by a person in his role as an agent is treated as also being obtained in his role as principal, even if his activities as agent are contrary to his interests as a principal.

*MCA Fin. Corp. v. Grant Thornton*, *L.L.P.*, 687 N.W.2d 850, 860 (Mich. App. 2004). We applied the imputation rule in *In re Dublin Sec., Inc.*, 133 F.3d 377 (6th Cir. 1997), holding that *in pari delicto* properly barred a Chapter 7 trustee's malpractice claims against law firms and attorneys who prepared the legal documents and represented Debtor in connection with Debtor's fraudulent public stock offerings: "[Trustee] admits in his complaint that the debtors' own actions were instrumental in perpetrating the fraud on the individuals choosing to invest in the

11

Dublin Securities schemes.  That pleading concedes, for example, that the debtors intentionally defrauded their investors." *In re Dublin Sec., Inc*., 133 F.3d at 380.

But Michigan law is clear that the imputation rule has an exception as well: "A corporate officer's fraud will not be imputed to the corporation, thus allowing the bankruptcy trustee to proceed with his claim, where there exists at least one innocent decision maker who, if he had been alerted to the fraud, could have stopped it." *MCA Fin. Corp.*, 687 N.W.2d at 860.  Thus, if the proposed second amended complaint properly pled that Pam was an innocent decision maker, the amendment should not have been rejected as futile.

As the bankruptcy and district courts noted, Trustee's complaint contains allegations that Bill and Pam, as sole shareholders of Debtor, coordinated the fraudulent transfer of Debtor's funds.  However, the proposed second amended complaint also contains allegations that Pam acted innocently.  And, Trustee correctly observes that although the complaint can be read to contain contradictory allegations—both that Pam did and did not intend to convert the funds— these allegations constitute proper alternative theories pursuant to Federal Rule of Civil Procedure Rule 8.

> A party may set forth two or more statements of a claim . . . alternatively or hypothetically, either in one count . . . or in separate counts . . . . When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims . . . as the party has regardless of consistency . . . .

Fed. R. Civ. P. 8(e)(2).  We agree with Trustee that a pleading does not become insufficient because it contains alternative, or even contradictory, claims. *Rowe v. Cleveland Pneumatic Co*., 690 F.2d 88, 92 (6th Cir. 1982).

Portions of the amended complaint allege that Bill alone coordinated the conversion: "Bill, as president, director and shareholder of OKP was in a position to control disposition of its

property," and "the transfers he orchestrated assured that he would have the benefit of substantially all of OKP's assets . . . ." Second Amended Complaint, ¶ 146; "At the time he orchestrated such transfers, Bill took no action in the nature of diligence to ascertain the value of the Excluded Assets . . . ." *Id.* at ¶ 147. Paragraph 148 can be read as alleging that Pam could have inadvertently converted the OKP funds: "After the first week of June 2009, Bill and Pam simply continued to receive transfers to OKP that they, in turn, applied to their personal benefit. . . ." *Id.* at ¶ 148. Further, Paragraph 217 of the proposed amended complaint reads:

> Pam and/or Bill are liable for conversion by aiding or abetting or assisting another in a conversion, even if acting innocently. *Prime Financial Service LLC v. Vinton*, 761 N.W.2d 694 (Mich. App. 2008). The tort of conversion may be committed unwittingly if a defendant comes into possession of another's property if the defendant is unaware of plaintiff's property interest. *Warren Tool Co. v. Stephenson*, 161 N.W.2d 133, 147-148 (Mich. App. 1968).

Trustee persuasively asserts that this paragraph "clearly was intended to cover the eventuality that Pam might have no involvement in the transactions and even invoked the Michigan law that would support such liability even if, as she said in her affidavit, she had merely been passive recipient of the funds wired to Arvest Bank." Thus, although the proposed amended complaint contains conflicting allegations, fairly read, it includes the alternative allegation that Pam acted innocently with regard to the conversion of Debtor funds.[12]

Because Pam's role in the conversion of Debtor's assets has not been resolved, it cannot be determined at this stage whether the *in pari delicto* doctrine bars Trustee's conversion claim against her and, if permitted, the claim would not be subject to dismissal under Rule 12(b)(6). The proposed amendment therefore was not futile and the motion to amend should have been granted.

---

[12] This conclusion does not depend on Pam's affidavit, which was prepared after the second amended complaint.

## CONCLUSION

We REVERSE the denial of Trustee's motion for leave to amend and REMAND to the bankruptcy court for further proceedings.